Okay, we'll now hear argument in the case of Linda Ann Baillie v. Medaire, Inc. Thank you, Judge Ikuda. I'd like to reserve three minutes for rebuttal. Please watch the clock. Good morning, Your Honors. I'm Megan Bennett. I represent, along with Rob Sprague and Frank Fleming, Linda Baillie, who is the surviving spouse and estate representative of James Baillie, who died following a heart attack that he suffered on a transatlantic flight from London to Phoenix. The district court in this case granted the Medaire defendant's motion for summary judgment, erroneously finding that there were no genuine questions of material fact as to whether Mr. Baillie's injuries and subsequent death were caused by an accident under the Montreal Convention. The accident inquiry has three factors, as the Supreme Court and Justice O'Connor said in the Sachs case. Was there an event? Was that event external to the passenger? And was the event unusual and unexpected? Sachs also instructs us that the event itself and the accident need only be one link in the causal chain leading to the ultimate injuries and death. So unlike a traditional proximate cause case, if it is a mere link, even if there are other factors contributing to the ultimate injuries and death, it is a compensable accident under the Montreal Convention. This court had earlier issued an order directing the parties to address the term servant and agent as they appear in the Convention. I wasn't sure if the panel would like me to start with that. I would be interested in why Medaire is an agent. Sure. So the Montreal Convention is the successor convention to the Warsaw Treaty. Under Warsaw, the terms servants and agents did not appear. The Montreal Convention adopted in large part the language of the Warsaw Convention and made a couple significant changes. One was removing the requirement that an injured party establish willful misconduct on the part of the air carrier. And the other had to do with the creation of a fifth jurisdiction where a suit could be commenced. It also expressly... The Montreal Convention wanted to adopt the Warsaw Convention's, I guess, judicial interpretation, reading and servant and agent. Well, certainly in the legislative history in the United States adopting the Montreal Convention, there is expressed discussion. In fact, Senator Lugar, who is the Committee on Foreign Relations chairperson,  the convention participants considered the large body of judicial precedent that has been established in the United States and the negotiators of the convention intended to preserve these precedents, both with respect to existing terms and also other aspects, that is, language not appearing in the Warsaw Convention in order to avoid unnecessary litigation over issues already established by the courts. Do we know that they're talking about the agent, the employer-agent language? Well, certainly by the time the Montreal Convention is adopted, there's a substantial body of law concerning agents and servants. Those terms had appeared to other international transport aviation conventions, the Guadalajara Conference and the Hague Convention, and that's the language at the International Civil Aviation Authority organization, which is the UN agency responsible for the conventions on international air travel, adopt for our purposes of Article 30 and Article 5043 the language from the Guadalajara and the Hague Conventions. But there's not debate or discussion at the Montreal Convention, within the Montreal Convention itself. There's just a wholesale adoption of those terms and then this language saying that we are going to preserve existing case law. So it doesn't expressly address servant or agent, but you're indicating that a fair inference is that that would be one of the established bodies of law that would be included in Montreal Convention. Am I understanding your argument? That's correct. And those other international documents that you're referencing now, do we have a reason to believe that agent in those is broader than our common law definition of agent? Because it seems like you need agent to mean something broader than the normal common law definition here. Let me be clear, first of all, so that for the plaintiff, I don't think we need to be within the convention to have a compensable injury against the med-air defendant. So if this is outside the scope of the Montreal Convention, then we can proceed with the negligence claim against the med-air defendants. Is that on appeal now, though? What's the status of that? Well, it's not because the parties had agreed and the district court found that the convention applied. So I think if this court found that there was not subject matter jurisdiction under the convention, it would have to remand the case to the district court for further proceedings. We did originally commence suit in state court in Arizona, and it was removed by the defendants to federal court. So if the convention is not applicable, then you would have a state law negligence claim? Correct. And our complaint did include allegations asserting that the med-air defendants had been negligent as well as that Mr. Bailey had suffered a compensable accident under the convention. Back to this idea, though, for the convention to apply, you do need something broader than the common law definition of agent? Well, I think that for the convention to apply, we would need the application of the in furtherance of test, which is what the majority of courts that had interpreted servant or agent had used, had employed. But there was no interpreting servant or agent to do because that language didn't exist. What do you mean by that? At the time of the Montreal Convention, you're saying the in furtherance of test didn't exist? The Warsaw, right? So didn't that case law come from the earlier convention? It comes from the Warsaw Convention. Right. And that Warsaw Convention didn't say servant or agent. No, but the case law interpreted servants and agents who were acting in furtherance of the carriers, the air carrier. But you're saying they interpreted servant or agent, but where were those words that they were interpreting? So the words aren't in the convention. Yes, so the words, there is at least one case, the Dozzo case in the Ninth Circuit, refers to the restatement as a source of the meaning of servant and agent. When I looked back at the Warsaw servant and agent cases, there's not a whole lot of discussion about what the source of that interpretation or that law is. It's really about carrier, right? The word in the Warsaw Convention would be the carrier, and the cases would say we include the carrier, servants, and agents defined as we define them. And I think that would be because of a policy determination that the convention is intended to avoid circumvention of the liability limitations, and so if a plaintiff could sue a servant or agent who is acting in furtherance of the carrier's mission, that that plaintiff could then avoid the limitations of liability that appear in the convention and leaving, basically circumventing the uniformity and limitations purposes of the convention. Go ahead. Other than the legislator, I think that you indicated one U.S. legislator had said that the Montreal Convention intended to include established bodies of law interpreting the Warsaw Convention. Other than that one indication, is there anything else in either the drafting history or the legislative history that would say that the definitions or the understanding of carriers, including servant and agents, in the Warsaw Convention should apply in the Montreal Convention? Not in the convention history, but there is a statement that was issued by the Assistant Secretary of State for Transportation Affairs, Mr. Byerly, in which he says the Montreal Convention, when talking about the scope, the reach to employees of airlines and also other existing case law, Mr. Byerly says the Montreal Convention preserves established law relating to other aspects of the Warsaw Convention. This comes after saying that we kept the language, we largely kept the Warsaw Convention language, and it preserves established law relating to other aspects of the Warsaw Convention that were acceptable to avoid unnecessary litigation. I'd like to move on to the question of whether there were genuine issues of material fact here. Could I just ask, so it seems that the contract, the MEDAIR contract with BA, which of course you weren't a party to, but it says there's no agency or partnership. Is that relevant to whether there's an... I mean, I take it you're not really arguing that they were an agent in any of the common law or typical sense of the word agent. Well, we haven't developed a record on that, so I don't think that we would be able to argue that based on the record as it is now because the district court had ruled that it was an agent under the convention. I'm not sure that a private party can contract around an international treaty. It may be that that's an issue between British Airways and MEDAIR if there were an indemnification agreement, but I don't think that it would bear directly on our suit against MEDAIR. But you're basically saying we should read agent as in furtherance of. Correct. Well, I think that's what the case law requires the court to do. Again, I'm not sure that for Mrs. Bailey it makes a meaningful difference because we do have the allegations of negligence, and if this court were to find that... But I think it does make a difference, right, because under the convention you don't have to show a liability as high as negligence. That's absolutely correct, and that's one of the major errors that we believe the district court committed in its ruling in this case. We also believe that the record contains evidence that would allow us to satisfy what I would call the higher standard of negligence liability if we had to proceed under a common law cause of action. But certainly we don't think that MEDAIR and British Airways can contract their way around the provisions of the international treaty. So I do understand that the parties have the language that MEDAIR is not an agent of the air carrier, but I think for purposes of the treaty it has to be treated as an agent under the convention. The district court, relying primarily on the Ninth Circuit's deep vein thrombosis cases, treated this essentially as a failure to warn suit, which it was affirmatively not. As the court knows, the sequence of events here is that Mr. Bailey started suffering a heart, started exhibiting the signs of a heart attack shortly after takeoff, and within a critical period of time when the plane was still able to divert to a location where he could have received meaningful medical treatment that both medical experts, both Mrs. Bailey's and MEDAIR's, acknowledged would have had both given him a greater likelihood of survival and also would have minimized the damage to his heart. The MEDAIR defendants failed to provide adequate advice to the flight crew. So there was evidence in the record from, I guess, opposing counsel from MEDAIR that the advice regarding diversion was reasonable. And then there was evidence from Mrs. Bailey that the medical advice did not meet emergency room standards, essentially. Was there evidence showing that the failure to divert was unreasonable based on the industry practice of when you divert for illness in the air? There was. So Dr. Kandipan, who was plaintiff's medical expert, says, I believe it's at page 63 of our excerpt of records in his deposition, that you have to perhaps draw the inference. And I will point out that I think this is a quintessential question for the jury. Whether there was an accident under the convention is a jury question if there are contested questions of material fact. Dr. Kandipan says that Mr. Bailey would have had an improved chance for survival with diversion at that point. And Captain Fowler, the British Airways captain on that specific flight, said he would have diverted had MEDAIR recommended a diversion to him. So Dr. Kandipan didn't have any – my understanding is he was an emergency room expert but didn't have experience with the criteria for diversion. But there was Captain Mesnard, who was the piloting expert on the plaintiffs, who offered testimony as well. And the defendants never moved to disqualify Dr. Kandipan as an inappropriate expert in this case. And there's no finding by the district court that the experts themselves were inadequate or the expert opinions were inadequate, just that there was – the district court treated this as a failure-to-warn case and didn't believe that there were any genuine questions of material fact. So my question, though, more generally, is there's obviously standards for when you divert an aircraft which are different than what you do in an emergency room. And given the impact of such a diversion on passengers and possible safety and the like, and my question is whether there was any specific information showing that under diversion standards as opposed to medical standards, which is how I read Dr. Kandipan's testimony, the plane should have diverted. Sure. I would point you to Dr. Reinhart's deposition in which he says that if he had credited the onboard physician's report of crackles, he would have believed that the heart attack were more serious and he would have considered a diversion. That alone creates a triable question of fact that should have gone to the jury here. I see I only have one minute left. I'd like to reserve my time. Of course. Thank you. Good morning. I'm Mark Dangerfield, Your Honors. I'm here representing MEDAIR and also the individual doctors, Dr. Stephen Reinhart and Dr. Jessica Moniz. May it please the Court, let me just begin with the jurisdictional questions that you had at the inception of opposing counsel's argument. The Warsaw Convention does actually mention agents, but obliquely. Both the Warsaw Convention and the Montreal Convention refer to liability of a carrier, and in neither convention do they define what a carrier is. In the Warsaw Convention, however, Article 20, it says the carrier is not liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures. So the concept of agents was at least there obliquely in the Warsaw Convention. Now, the addition of the term servants or agents, that was introduced much earlier than the adoption of the Montreal Convention. As Ms. Bennett mentioned, there were the Hague Protocols. That was where I believe they were first, the language of servants and agents was first placed. You raised the question, Judge Friedland, is whether or not you need to interpret agent as something broader than we would here as in the common law. And the answer is yes, that is certainly the case, and the courts have interpreted it to include independent contractors in numerous circumstances. And I've got a few cases. Maybe I'll just cite you to one because it's a later case, and if you look at that, it cites some other cases. But what would the standard be by which a jury would have to determine whether the agency and servant provision of the Montreal Convention applied? I don't, I think that would be a matter for the court to determine, not a jury, Your Honor. Based on the, let's put it this way. I've never seen a case that had that go to the jury. The case is all, the courts determine that as a matter of law that the convention applies or doesn't apply. What would be the applicable standard that we would have to employ? Well, I think the applicable standard is, as Ms. Bennett correctly said, whether the company involved, whether you deem it an agent or a subcontractor or an independent contractor, whether their services was in furtherance of the contract of carriage. That's the standard. from the Warsaw Convention would still apply today is what you're saying. Yes. And courts have applied it today to the Montreal Convention. So just to make sure I understand, the language, the in furtherance of the language doesn't appear in the Warsaw Convention. It's a mostly lower court interpretation of when someone is a carrier by virtue of being a servant or agent.  Yes. Yes, that is correct, Judge. The opposing counsel noted some drafting, not drafting history, but some comments on the drafting history saying we intended to retain the body of law for the Warsaw Convention and the Montreal Convention. Is there anything else that indicates that the drafters of the Montreal Convention intended this in furtherance test developed by the lower courts in applying the Warsaw Convention to apply in the Montreal Convention? Not that I found in the drafting history. There is, when the treaty was transmitted to the Senate for ratification, there's a document. I'm going to give you the Westlaw number because if you are interested in looking it up, but it's 1999 WL33292734. It contains the treaty and the formal submission by President Clinton of that treaty to the Senate, and it also includes an article-by-article analysis of the changes, which is of some use. So Article 30 of the Montreal Convention is the article that contains this language about servants or agents. And in this article-by-article examination, it says that this paragraph clarifies that servants or agents may avail themselves of the same conditions and liability limitations to which the carrier is entitled under the convention. Okay. So that's not very helpful. If we adopt the inferred standard, then you would – how would you apply it in this case, that Medea still would come under the umbrella of that standard? Yes, Your Honor, because British Airways is responsible for the safety of its passengers. British Airways could have, and some airlines do, in fact, hire their own medical personnel on the ground to provide the type of services that MEDAIR does. That is, they will have a doctor available that their airlines – that they employ directly that they can call to give them additional help when they have medical emergencies. So in this case, they contract with MEDAIR, who provides emergency department-trained documents – doctors, excuse me. So I appreciate your candor, but then why should this case not go to the jury to decide, as a matter of fact, whether there should be some liability under the unusual standard or under the issue of causation? It seems as though those are factually based considerations for a jury. If I'm not correct, see whether you can dissuade me. Okay. Well, Judge Ikuda had the correct question, which is you have to show some standard that would call for diversion of an airline in these circumstances. You can't just say, well, it's a fact question for the jury. No cases – all the Ninth Circuit cases, certainly, and other courts have said, you need to find some industry standard that would require diversion or an – When it's a cardiology emergency, then why isn't a cardiologist's testimony a standard about the standards of care in cardiology? I understand that you're trying to argue that it should be the standards for diversion of airplanes, but if I understand correctly, there are only really two players in this industry, and it would seem like if that's the standard, then by providing bad care, you just create a standard by which everyone always provides bad care in this industry and you'd never be liable for anything. So it doesn't really make sense to me. Well, let me address that, Your Honor. Aviation is one of the most highly regulated industries there is. Every country has their own regulation. But is there regulation of this particular medical advice for diversion? Well, that's what I'm getting to, Your Honor. It is very difficult to issue standards as to when an airline should divert. Now, our FAA could issue those standards. The International Civil Aviation Organization under the U.N. could issue those standards. So you're saying there are no regulatory standards for this? That's correct, Your Honor. And there are none for a reason, and that reason is with all the things going on in an airline, it's very difficult to dictate in a particular circumstance when a diversion should take place. If somebody was seriously ill, there's no cause of action he would have or she would have under the convention because of the absence of standards? Is that your position? Well, that's not my position. The position is that if there's no standards that govern diversion and the allegation as here is a failure to recommend diversion, then that's not actionable. So could there ever be liability for MEDAIR coming out of a recommendation about whether someone needs medical treatment on an airplane? Well, if the question is, there could be action if you're talking about general medical treatment. But when you get to the question of diversion and when someone should recommend diversion or when the plane should divert, there's no case law that I'm aware of that has found the mere failure to recommend diversion. How about Hussein? Yeah, the Supreme Court in Hussein, I was going to ask, seems to say that under certain circumstances there's a clear answer that that would be an accident where the medical doctor said the life can be saved only if you land in one hour. It's industry standard in airline policy to divert when passenger faces imminent death and the airplane is within 30 minutes of a suitable airport. So Hussein said under those circumstances that could be an event or a happening that would constitute an accident. Yes, and I would agree in those unique circumstances. But notice what those included. They included a violation of industry standards and internal policy. And to make it more extreme, they included the passenger being unconscious, somebody recommending that the or somebody saying that he needs to have medical treatment or he's going to die. And there's a diversion location in 30 minutes. None of those applied in our situation. The Safa case out of the- But the Supreme Court gives that example to show that inaction can be a ground for liability, but it never says you need those exact facts. But you need some facts, your Honor. In this case, Mr. Bailey boards the plane and he's got chest pains. Four hours after he boards, they call Medair. The airlines calls Medair. But if every cardiologist would say divert, now you may argue that that's not the situation here, but say every cardiologist in the country other than the ones who work for Medair would say divert because this person needs emergency help. But Medair's policy is we don't divert. Now, is that a defense to liability because Medair is basically most of this industry? Well, Medair only recommends diversion. It's the pilot that makes the final decision. And the pilot has to take into account a number of things. But the decision to recommend diversion is based on factors. Now, in this case, the facts available are that Mr. Bailey had some chest pain. A bunch of facts. Why should that be for a jury to wrestle with? Well, it might often be. But in this case, the unique facts here, which is that Mr. Bailey had no prior cardiac history, was not on any medications, was not unconscious. But there's evidence and testimony all over the place here that seems to me to be the prototypical case for a jury to resolve. Well, this is a case that involves evaluating standards. And to do that, they have to find some either industry standards or some internal Medair standards. And if there are none, which they haven't come up with any, then that's what the district court found was grounds for finding that there was no accident. And even if there were an accident, Your Honor, they still need to prove causation. And in this case, they would need an opinion from a doctor that the failure to divert more than likely caused Mr. Bailey's death. So they don't have that. Can I get back to the standard, the unusual or unexpected? So what do we know about whether diversion in this situation is unusual or unexpected, whether there's a genuine issue, material fact, whether it would be expected? So in the ER context, it sounds like it would be expected that the person would be given fairly immediate treatment. Does that apply in the airline situation? No, Your Honor. If you go to an emergency department, they can immediately look at you, palpitate you, listen to your heart, take blood tests, hook you up to an ECG. You can't do any of that on an airline. In fact, if you're a midair doctor, you can't even speak to the passenger. You can't see him. You can't evaluate him. All you can do is get some secondhand information about other people that have examined him. Here, the onboard doctor said, we don't have any idea of what's going on. Eventually, Mr. Bailey himself, at the time when the plane was considering diverting, said, I don't want to divert. The onboard doctor said, we don't think it will be a problem. If you don't divert. So you have all of these factors in this case that don't suggest any reason to divert other than Mr. Bailey had some chest pains. Now, chest pains, 90% of the time, are not the result of a heart attack. And that's why we've cited in the briefs that incidents of chest pain on flights midair is involved with, 92% of the time, do not divert. But there is much more here than that. There's much more here than that. Well, there's certainly more, but the more doesn't amount to enough, I submit, Your Honor, to submit to the jury. Without any evidence that there's a violation of standards. Without any evidence that Mr. Bailey's life would have been actually preserved if they did divert. Can I go back and just ask a practical question? It seems to me that if you argued that your client was not an agent, you would not have any liability under the convention. So I'm confused why you're arguing that you are an agent. Well, I'm arguing not that we're an agent, but that we're subject to the convention under the tests that have been used by all the courts we've seen. But as a practical matter, why? Why do you want to be subject to the convention? Well, the convention gives us, the convention deals with accidents that are unusual or unexpected and doesn't deal with negligence in a medical sense. And so the arguments that they would like to make about, gee, he was medically negligent, don't apply here. But they have a separate claim about that. So it seems like you're increasing the ways you might be liable instead of narrowing them by arguing that you're possibly liable under this other mechanism. I'm quite confused about that. Well, Your Honor, both the plaintiffs filed their complaint. You're being candid with the court on a jurisdictional issue as a highly respected lawyer. But do you think it is a jurisdictional issue or is it just an element of a convention claim? I don't personally see that there's an impediment to jurisdiction here because, as I say, there's lots of case law where courts have analyzed these subcontractors, agents, independent contractors, in cases such as the cleaning crew on an airplane which is contracted out to somebody. You've been viewed as subject to the convention. Or the case of somebody that installed the in-flight entertainment system in the plane, clearly not an agent in the sense of a common law agent, as we would put it under American law, but nevertheless viewed as subject to the terms of the convention. So that's why I'm out of time. I'm happy to answer any more questions. We appreciate your argument. Thank you. Your Honor, Mr. Dangerfield was arguing his defenses under Article 21. He was not arguing anything about whether this was an event, an accident, meaning an event that was external to the passenger that was unusual or unexpected. Why is it unusual or unexpected? Just help me with that. Why is there a genuine issue on that? Because unusual or unexpected is something that you would not, by definition, expect to have happened. So here we have in the record evidence that MEDAIR is contracted with British Airways to provide the highest quality of medical advice when, among other things, there's a passenger suffering an in-flight medical emergency. MEDAIR's doctors gave incompetent medical advice. Dr. Reinhart didn't take any notes. He didn't pass notes on to Dr. Monis. He didn't take adequate initial information from the flight crew about the passenger's symptoms. So the negligence of the doctors is an unusual and unexpected event for Montreal Convention purposes. It can be. It doesn't have to be. So I would say, you know, if you look at the Venn diagram of convention and negligence, there's an overlap. And unreasonable behavior can satisfy both a traditional tort negligence standard as well as the convention. But what you heard from Mr. Dangerfield was why liability should be limited under Article 21. Yes, Judge Block? I take it you're saying that the issue of unusual and unexpected should be for the jury to resolve. Absolutely. So I guess I'm going to put in a pitch for we lowly district court judges. Let's assume that this panel reverses and I am the district court judge and I have to charge the jury as to what they should consider to determine whether this was unusual and unexpected. What would the proper charge look like? I think the charge could be that if you find that Mr. Bailey's injuries were caused in part by an event that was external to his own natural reaction to the flight and that were not what you would have expected in light of the sequence of events. So for example, if this were the Fishman case, which was the child who had an earache when the air cabin was depressurizing and the flight attendant applied a hot compress but then accidentally poured hot water. I get that. Would I also have to instruct the jury as to whether they should or should not or may or may not consider whether there were any standards by the industry or whatever? I think that could be a factor. Part of the charge? It could be part of the charge. So I think the industry standards, the norms, the reasonableness, all of these are part of the charge, but the critical factor is whether it was a link in the cause of chain of causes leading to the death. I just want to say the unique, I heard a lot about the unique facts here. These are facts that should have gone to the jury. They should determine whether or not there was an accident under the convention. Thank you, Your Honors. We thank both sides for their argument in this complicated case. And the case of Linda Ann Bailey v. Medair, Inc. is submitted and we're adjourned for today.
judges: Ikuta, Friedland, Block